IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSEPH RANDAL GEORGE, §
§
Plaintiff, §
§
v. §
§ CIVIL ACTION NO.
SOUTHWESTERN BELL TELEPHONE § 3:04-CV-1994-P
COMPANY, D.B.A. SBC §
COMMUNICATIONS, INC., §
§
Defendant. §

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Southwestern Bell Telephone Company's ("SBC" or

"Defendant") Motion for Summary Judgment, filed August 26, 2005. After careful consideration

of the Parties' briefing and applicable law, the Court hereby DENIES Defendant's motion.

## FACTS

In November 1995, Plaintiff Joseph Randal George ("Plaintiff"), a white male, began

working as a Customer Service Technician ("CST") for SBC in Fort Worth, Texas. In his job as a

CST, Plaintiff was responsible for the installation and repair of telephone equipment in customers'

residences and businesses, as well as in the field.

In July 2001, Plaintiff was transferred to Mineral Wells at his request. (Def.'s App. at 37.)

From the beginning of his employ in Mineral Wells, Plaintiff alleges he was frequently subjected

to racially and sexually offensive comments and actions by his co-workers. (Def.'s App. at 57-63,

102.)

Shortly after arriving in Mineral Wells, Plaintiff advised his union representative of the

1

offensive behavior. (Def.'s App. at 102.) According to Plaintiff, the atmosphere worsened after he met with the union representative. (Def.'s App. at 211; Pl.'s Ex. 2.)[1] The union representative allegedly told Plaintiff that "things are different out here [in Mineral Wells]." (Pl.'s Ex. 1.)

In August 2001, in an attempt to minimize his interaction with his co-workers, Plaintiff approached his immediate supervisor, Philip Self ("Self"), and requested that he be allowed to go on "Home Base." (Def.'s. App. at 68, 102-03; Pl.'s Ex. 2.) "Home Base" is a program under which a CST can take his vehicle home with him each night and report directly to his first assignment in the morning, without having to come to the company garage each morning to receive the day's first assignment. (Def.'s App. at 55, 107.) Plaintiff's request was granted, and Plaintiff was on Home Base until January 2002. (Def.'s App. at 56.) During this time, his interaction with co-workers was sporadic. (Def.'s App. at 57)

Plaintiff contends that during this time his work environment worsened to the point that he suffered physically from sleep impairment and anxiety-related muscle spasms that caused him to miss work. (Pl.'s Ex. 2.) Plaintiff also complains that his work performance was hampered because he was not given access to data that other CSTs had access to and because he was not given the necessary tools other CSTs were given. (Pl.'s Ex. 8.)

On January 18, 2002, while on medical leave for the muscle spasms, Plaintiff met with his second line supervisor, David Kroon ("Kroon"), to inform him of the offensive environment that existed at work and that he needed certain tools to do his job. (Def.'s App. at 64, 103, 151, 157; Pl.'s Ex. 2.) Kroon appeared concerned about the situation and explained that Self would take a

---

[1] Plaintiff's failure to comply with the Local Rules' requirement that the appendix be numbered sequentially has caused the Court some difficulty locating and citing to particular exhibits. (*See* Local Rule 56.6(b)(3).)

"shot" at Plaintiff in retaliation for his complaints. (Pl.'s Ex. 1.)

Three days later, on January 21, 2002, Self removed Plaintiff from Home Base, purportedly for failing to meet the minimum performance standard of four jobs per day during the September 2001-December 2001 time period. (Def.'s App. at 103, 108.)

On January 24, 2002, Plaintiff's union representative met with Self on Plaintiff's behalf to ask if the Home Base decision could be reversed and to discuss Plaintiff's complaints about the offensive language used in the workplace. (Def.'s App. at 167-68.)

On January 31, 2002 - in response to this complaint - Self alleges he met with his crew (including Plaintiff) and reminded them to act professionally and to use appropriate language in the workplace and with customers. (Def.'s App. at 108, 151, 168, 173-74.) Kroon observed the meeting to ensure the issue was handled appropriately. (Def.'s App. at 151.) Plaintiff disputes that this reminder was given during the meeting. (Def.'s App. at 47, 72.)

On February 27, 2002, Plaintiff again met with Kroon and another union representative regarding the offensive language and the tools he had been provided. (Def.'s App. at 104, 152.) According to Plaintiff, Kroon was frustrated with Plaintiff this time and urged him to become a team player. (Def.'s App. at 104.) Kroon also told Plaintiff that he was placing Plaintiff under a microscope and that Plaintiff was lucky to have a job. (Pl.'s Ex. 1.)

Plaintiff took medical leave from March 8, 2002 until July 8, 2002 allegedly due to emotional stress caused by the disturbing work environment. (Def.'s App. at 60, 104.)

While on disability leave, Plaintiff sent a letter dated March 22, 2002 to SBC's Human Resources department about the offensive work environment. (Def.'s App. at 66, 102.) On April 4, 2002, Plaintiff reported the situation to SBC's EEO Hotline and complained about the offensive

3

language and verbal threats of violence he endured from his co-workers. (Def.'s App. at 62-63, 96-101.)

When Plaintiff returned from his medical leave, three different SBC departments began investigating Plaintiff's claims: SBC's Asset Protection department investigated the threat of violence (Def.'s App. at 182-86); the EEO department investigated the offensive language (Def.'s App. at 188-89); and the Human Resources department met with Plaintiff on July 11, 2002 regarding his complaints in general as well as the Home Base removal, the tool issue, and job assignments, specifically. (Def.'s App. at 73, 201.)

On July 10, 2002, Self met with Plaintiff to discuss Plaintiff's alleged violation of department policy by failing to call his supervisor when a job he was on lasted more than two hours. (Def.'s App. at 15, 109.) Within the next week, Plaintiff again failed to call his supervisor when a job he was on lasted more than two hours. (Def.'s App. at 15-16, 110.) Consequently, on July 17, 2002, Self, with the concurrence of Kroon, placed Plaintiff on Written Reminder status which is an intermediate disciplinary level. (Def.'s App. at 18, 93, 110, 153.)

On July 23, 2002, Plaintiff filed an EEOC Charge of Discrimination ("EEOC Charge") alleging that he was retaliated against by being issued the written reminder for complaining about his offensive work environment. (Def.'s App. at 105.)

On August 1, 2002, Plaintiff again violated the same policy. (Def.'s App. at 111.) On August 6, 2002, Self elevated Plaintiff's disciplinary level to Decision Making Leave ("DML") status. (Def.'s App. at 95, 111, 153.) In that notice, Plaintiff was warned that any failure to follow company procedures, including poor attendance, may result in his termination. (Def.'s App. at 31, 95, 111.)

4

Beginning October 28, 2002 to November 26, 2002, Plaintiff took time off from work due to illness. (Def.'s App. at 34, 153)  He also took time off from December 9-13.  (Def.'s App. at 34, 153.)  These absences caused Plaintiff to have unsatisfactory attendance, which violated the terms of the DML. (Def.'s App. at 48, 153.)  On December 17, 2002, Plaintiff's new supervisor, Gerald Scott, told Plaintiff there would be a disciplinary meeting on December 19.  (Def.'s App. at 8.)

On December 19, 2002 Kroon informed Plaintiff that due to his failure to maintain satisfactory attendance while on DML, Plaintiff would be suspended pending termination.  (Def.'s App. at 154.)  Plaintiff was formally terminated on January 29, 2003.  (Def.'s App. at 154.)

## DISCUSSION

To state a claim for retaliation, a plaintiff must prove that (1) he engaged in protected activity pursuant to Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action. *See Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 198 (5th Cir. 2000).

Once a plaintiff sets forth this *prima facie* case, the defendant then must articulate a legitimate, non-discriminatory reason for its decision; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative). *See Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

If the plaintiff demonstrates that retaliation was a motivating factor in the adverse employment decision, the defendant must show that it would have made the same adverse

employment decision regardless of the protected activity.  *See id.*

I.     **PLAINTIFF'S *PRIMA FACIE* CASE OF RETALIATION.**

The first element a plaintiff must establish to state a *prima facie* case of retaliation is that he

engaged in protected activity pursuant to Title VII.  *See Arnold v. U.S. Dep't of Interior*, 213 F.3d

193, 198 (5th Cir. 2000).  Title VII's retaliation provision makes it unlawful for an employer to

discriminate against an employee because he has opposed any practice made an unlawful

employment practice or made a charge, testified, assisted or participated in any manner in an

investigation, proceeding or hearing under Title VII.  *See* 42 U.S.C. § 2000e-3(a).  There are two

distinct clauses contained in this provision - the "participation" clause and the "opposition" clause.

*See Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136 (5th Cir. 1981).  The

opposition clause provides protection against retaliation for employees who oppose unlawful

employment practices committed by an employer, whereas the participation clause protects

employees against retaliation for their participation in the procedures established by Title VII to

enforce its provisions.  *See id.*

Plaintiff alleges two instances of retaliation.  First, he alleges that he was retaliated against

(reprimanded and ultimately terminated) for complaining to SBC and union representatives about

his co-workers' sexually explicit conversations and racially derogatory comments in the workplace.

He also alleges that he was retaliated against (terminated) for filing the EEOC Charge.

It is undisputed that Plaintiff suffered an adverse employment action when he was terminated

in December 2002-January 2003.  (*See* Pl.'s Ex. 18.)

A.     **Protected Participation.**

Plaintiff engaged in protected activity when he filed his EEOC Charge on July 23, 2002.

**B.   Protected Opposition.**

To establish a claim under the opposition clause, a plaintiff must demonstrate that he was engaged in conduct that was in opposition to an unlawful employment practice of the defendant. *See Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136 (5th Cir. 1981).  For a plaintiff to prove that he engaged in statutorily protected expression, he must show that his complaints were in opposition to conduct by his employer that constituted an unlawful employment practice or conduct that the plaintiff reasonably believed was unlawful under the statute.  *See Green v. Admin. of Tulane Educ. Fund,* 284 F.2d 642, 657 (5th Cir. 2002); *Payne,* 654 F.2d at 1140-41.

Plaintiff voiced to SBC his opposition to his co-workers' use of racially derogatory and sexually explicit language on numerous occasions.  Plaintiff argues that he reasonably believed the sexually and racially inappropriate comments were illegal based on training he received as an employee of SBC.  (Def.'s App. at 49.)  Defendants agree that the language of which Plaintiff complains is inappropriate and that SBC  policy prohibits such language.  (Def.'s App. at 188-89; Def.'s Reply at 6.)

In light of these facts, the Court concludes that a jury could find that Plaintiff reasonably believed the complained-of conduct was unlawful and thus a fact issue exists as to whether the opposition constituted protected activity.

**C.   Causal Connection.**

Defendant contends that Plaintiff cannot establish a causal connection between the protected activity and the termination because Defendant did not learn of Plaintiff's EEOC Charge until after Plaintiff's termination.  (Mot. at 20.)  In support of its argument, Defendant proffers testimony from SBC employees that Defendant did not learn of Plaintiff's EEOC Charge until February 7, 2003 -

ten days after Plaintiff's January 29 termination. According to Patricia O'Neal of SBC's EEO Division, Defendant first learned of Plaintiff's EEOC Charge through a letter dated February 7, 2003 from the TCHR to Defendant. (Def.'s App. at 190-92.) Likewise, Self and Kroon testified that they did not learn of the EEOC Charge until after Plaintiff's termination date. (Def.'s App. at 111, 154.)

In response, Plaintiff submits a Notice of Charge of Discrimination addressed to Defendant from the EEOC that purportedly required Defendant to respond to the EEOC Charge no later than August 23, 2002. (Pl.'s Ex. 18.) Plaintiff argues that the obvious conclusion of this document is that Defendant knew about the EEOC Charge before Plaintiff's termination in January 2003.

Plaintiff also argues that the temporal proximity between Plaintiff's protected activity and his termination is sufficient in itself to establish a *prima facie* case. (Resp. at 9.) The Fifth Circuit has held that "timing can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate." *See Fabela v. Soccoro Indep. Sch. Dist.*, 329 F.3d 409, 418 n.9 (5th Cir. 2004) (citing *Shackelford v. Deloitte & Touche*, LLP, 190 F.3d 398, 409 (5th Cir.1999)). Thus, the fact that there is a close temporal connection between Plaintiff's protected activity and his termination can be considered by the Court in determining whether a causal connection exists.

The evidence indicates that Plaintiff complained to Kroon on February 27, 2002. Plaintiff then took medical leave from March 8 until July 8, 2002. During that time, Plaintiff contacted SBC's Human Resources Department and EEO Hotline to complain about his co-workers' conduct. Immediately upon his return, Self began reprimanding and disciplining Plaintiff for violating the call-in policy. One week after Plaintiff filed his EEOC Charge, he was placed on Decision Making Leave status. He was terminated shortly thereafter.

When viewing the facts here in the light most favorable to Plaintiff, the Court concludes that a fact issue exists as to whether Defendant received or knew of the Notice of Charge of Discrimination or the EEOC Charge prior to Plaintiff's termination. The evidence also indicates that the disciplinary actions taken against Plaintiff got progressively more severe as Plaintiff's protected activity increased. A jury could conclude from the evidence that Plaintiff's supervisors actively sought opportunities for disciplining, and ultimately terminating Plaintiff in retaliation for making complaints to SBC and the EEOC about his co-workers' conduct. For these reasons, the Court finds that Plaintiff has presented evidence sufficient to raise a fact issue that a causal connection exists between the protected activities and Plaintiff's termination.

Therefore, the Court finds that Plaintiff has established a *prima facie* case of retaliation under both the opposition and participation clauses.

## II.    BURDEN-SHIFTING ANALYSIS.

Defendant asserts as its legitimate, non-discriminatory reason for Plaintiff's termination the fact that Plaintiff violated the call-in policy during the week of July 10-17, 2002 (which caused him to be placed on Written Reminder status) and again a couple of weeks later (which caused him to be just placed on Decision Making Leave status). (Def.'s App. at 8, 12-24.) Plaintiff was notified that as long as he was on Decision Making Leave status, any failure to follow company procedures, including poor attendance, may result in his termination. Plaintiff then took five weeks of leave that violated the company's attendance policy and was not FMLA protected. According to Defendant, Plaintiff was terminated because this lengthy leave period violated company attendance policy.

Because Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must offer sufficient evidence to create a genuine issue of material fact either

9

(1) that Defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that Defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's protected characteristic (mixed-motive[s] alternative).

Plaintiff's supervisors initiated the disciplinary process against Plaintiff immediately after he returned to work after complaining to SBC.   Once this process began, Plaintiff progressed through the disciplinary stages swiftly.   The Court concludes that a reasonable jury could find based on the evidence that although Plaintiff may have been terminated for violating the attendance policy while on Decision Making Leave status, his supervisors made concerted efforts to retaliate against Plaintiff for repeatedly complaining about his co-workers' conduct.

Defendant has not presented any evidence to demonstrate that SBC would have terminated Plaintiff regardless of the protected activity.

Therefore, the Court hereby DENIES Defendant's Motion for Summary Judgment.

It is SO ORDERED, this 5th day of December 2005.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE